UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

ANTOINE HYLTON, A 041-461-038,

                Petitioner,

   -v-                                     No. 15-CV-1243-LTS

CHRISTOPHER SHANAHAN,
in his Official Capacity as
New York Field Office Director for
U.S. Immigration and Customs
Enforcement <u>et</u> <u>al.</u>,

                Respondents.

<u>OPINION AND ORDER</u>

APPEARANCES:

QUEENS LAW ASSOCIATES, PUBLIC
DEFENDER OFFICE
  By:   Su Yo Yi, Esq.
118-21 Queens Blvd., Suite 212
Forest Hills, NY 11375

*Attorneys for Petitioner*

PREET BHARARA
United States Attorney for the Southern
District of New York
  By:   Brandon Matthew Waterman
       Assistant United States Attorney
86 Chambers Street
New York, NY 10007

*Attorney for Respondents*

LAURA TAYLOR SWAIN, United States District Judge

Petitioner Antoine Hylton ("Hylton" or "Petitioner"), who has been detained without a bail hearing since July 1, 2013, in connection with removal proceedings by the United States Immigration and Customs Enforcement ("ICE" or "the Government"), seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Hylton has been detained pursuant to Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates detention for aliens who have been convicted of certain crimes for the duration of their removal proceedings. Arguing (1) that he is not subject to section 1226(c) and is therefore being detained in violation of the law and (2) that he is being detained in violation of his constitutional right to due process, Hylton seeks immediate release or an order requiring an individualized bond hearing during which the Government would be required to prove the necessity of his continued detention.

The Court has considered thoroughly the record, including Hylton's petition ("Petition"), his memorandum in support of the petition (dkt entry no. 6), the Respondent's memorandum in opposition to the petition (dkt entry no.8), and Hylton's reply memorandum (dkt entry no. 10).

For the following reasons, Hylton's Petition is granted in part and denied in part. The Court directs Respondent to provide Hylton with an individualized bond hearing, no later than June 23, 2015, pursuant to 8 U.S.C. § 1226(a).

BACKGROUND

The pertinent, undisputed facts of this case may be summarized as follows. Hylton is a native and citizen of Jamaica and has been a lawful permanent resident of the United States

since 1989.  Between 2006 and 2010, Hylton was charged with fourteen crimes and, following guilty pleas, was convicted of six.  Hylton was arrested in August 2010 for controlled-substance offenses and posted bail pending resolution of the charges.  In May 2011, he was convicted of criminal sale of marijuana in the third degree and criminal possession of marijuana in the fourth degree, and was sentenced to a term of probation for each of those offenses.  There is no proffer that either of the arrests on which Respondent relies postdated a conviction for narcotics-related activity.  Indeed, Respondent's Notice to Appear ("NTA") is premised on Petitioner's May 2011 narcotics-related convictions, for which he received non-custodial sentences after being released on bail in 2010.

On July 1, 2013, ICE arrested Hylton when he checked in for his probation appointment.  ICE subsequently served Hylton with an NTA, commencing removal proceedings against him.  The NTA charged that Hylton was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and (a)(2)(B)(i), based on his two May 2011 convictions.  Based on these convictions, ICE determined that Hylton was subject to mandatory detention under 8 U.S.C. § 1226(c).

Since the commencement of removal proceedings in July 2013, the immigration judge has held fourteen master calendar hearings, two competency hearings, and three merits hearings in Hylton's case.  The hearings have been adjourned several times at Hylton's request, to permit time to prepare motions or additional submissions, among other reasons.  The testimonial aspect of his merits hearing was completed in April 2015.  On May 15, 2015, according to Petitioner's counsel, the immigration judge issued an oral decision cancelling the notice of removal upon a finding that one of Hylton's offenses of conviction was not an aggravated felony.  The Government has expressed its intention to appeal the aggravated felony determination.

On February 20, 2015, Hylton filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release from custody, or in the alternative, a bail hearing at which the Government would be required to demonstrate that his continued detention is justified. Pet. at 14.  The Government opposes the petition; the matter was fully briefed as of April 27, 2015.

## DISCUSSION

Hylton relies principally on two statutory interpretation arguments in making his claim of entitlement to the writ: (1) that the detention mandate of 8 U.S.C. § 1226(c) does not reach him because he was never "release[d]" from a sentence of custodial imprisonment; and (2) that even if there was a relevant "release" from a custodial sentence, the detention mandate of 8 U.S.C. § 1226(c) does not reach an individual who, like Hylton, was not immediately taken into ICE custody in connection with removal proceedings after "release."  Additionally, Hylton argues that the length of his detention without a hearing may violate his constitutional right to due process.  The Court turns to Hylton's first statutory interpretation argument.

Scope of 8 U.S.C. § 1226(c) Mandatory Detention Authorization

A statute is construed in accordance with the meaning of its plain language unless it is ambiguous.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).  If a statute is ambiguous and an agency with jurisdiction has construed it, a court must defer to the agency's construction of the ambiguous language if the agency's construction is based on a reasonable interpretation of the ambiguous provision.  Id. at 842–44.

Section 1226(c) provides, in relevant part, that

>(1) Custody.  The Attorney General shall take into custody any alien who—
>
>>(A) is inadmissible by reason of having committed any offense covered in 8 U.S.C.S. § 1182(a)(2),
>>(B) is deportable by reason of having committed any offense covered in 8 U.S.C.S. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),
>>(C) is deportable under 8 U.S.C.S. § 1227(a)(2)(A)(i) on the basis of an offense for which the alien has been sentence [sentenced] to a term of imprisonment of at least 1 year, or
>>(D) is inadmissible under 8 U.S.C.S. § 1182(a)(3)(B) of this title or deportable under 8 U.S.C.S. § 1227(a)(4)(B),
>
>when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
>(2) Release.  The Attorney General may release an alien described in paragraph (1) [only in limited circumstances regarding protection of a witness or potential witness that do not apply in Hylton's case].

8 U.S.C.S. § 1226(c) (LexisNexis 2014).  A person "is deportable" under 8 U.S.C. § 1227(a)(2)(A)(iii) if he has been convicted of an aggravated felony after admission, and "is deportable" under 8 U.S.C. § 1227(a)(2)(B)(i) if he has been convicted of a violation of a law relating to a controlled substance, with an exception for possession of a personal use quantity.

<u>The meaning of "release"</u>

Hylton argues that, because he was not in custody at the time of either of his relevant convictions and was never sentenced to a custodial term of imprisonment – he was merely sentenced to probation – there was no qualifying "release" upon which ICE was empowered by 8 U.S.C. § 1226(c) to apprehend and hold Hylton in mandatory detention.  The Government responds that the Court should treat Petitioner's earlier, pre-conviction, release from arrest as the qualifying "release" for purposes of 8 U.S.C. § 1226(c).

In construing the statute, a court first inquires whether the statutory text is ambiguous. Another court in this district has considered the question of whether a pre-conviction release can constitute a qualifying release under this statutory provision. In Straker v. Jones, Judge Engelmayer found the Government's position untenable, reasoning that to construe the statute as authorizing detention of an alien without bond upon his or her pre-conviction release from arrest would render the detained alien unavailable to proceed properly in the criminal adjudication process, and "create discord" with other subdivisions of the statute that contemplate ICE detention only after an individual serves a custodial sentence. 986 F. Supp. 2d 345, 357-58 (S.D.N.Y. 2013). In contrast, the natural reading of the statute's text "fits a paradigm in which the alien (1) is convicted of an offense enumerated in § 1226(c)(1)(B), (2) serves a prison sentence for such a conviction, and thereafter (3) is released to DHS." Id. at 357. This Court agrees that this natural reading of the statute is the only reading that is reasonably consistent with the structure of the statute. The Court finds the statute unambiguous in this regard. Where, as in this case, there is no indication that Hylton was arrested on the qualifying charges at any time after a conviction on another charge that would have supported deportation, the plain language of the detainer statute precludes use of a pre-conviction arrest and release as the predicate for mandatory detention. Based on the parties' submissions in this matter, it appears that Hylton was not "deportable" until he was convicted, and therefore was never "released" at a time when the statute required detention.[1]

---

[1] Because the record shows no conviction that would have made Hylton "deportable" prior to his arrests for the crimes cited in the NTA, the Court does not address the significance of an arrest taking place after such a conviction with respect to Respondent's obligation to detain a person "when the alien is released."

The Government posits, in its papers, that concern about mandatory detention prior to a qualifying conviction should be addressed by reading the relevant statute to impose a detention mandate arising upon "the latter of [the alien's] conviction or his release from non-DHS custody." (Respondents' Opp'n Br. 20.)  The Court, however, is mindful that courts must "ordinarily resist reading words or elements into a statute that do not appear on its face."  Bates v. United States, 522 U.S. 23, 29 (1997).  The Government's interpretation would require just that.  The statute calls for detention of certain convicted felons "when the alien is released."  It provides no delay for later adjudication of guilt.

The Court is aware that the BIA has, in two of its decisions, made passing reference to the qualification of release from a pre-conviction arrest as the predicate for mandatory detention.  In re Kotliar, 24 I. & N. Dec. 124, 125 (BIA 2007); In re West, 22 I. & N. Dec. 1405, 1410 (BIA 2000).  The BIA offered no reasoning for its position in either of the decisions, and this Court finds the position inconsistent with the plain and unambiguous terms of the statute, which, as relevant, authorizes mandatory detention upon the release of a "deportable" person who has been convicted of an enumerated crime.  The Court accordingly declines to defer to the BIA's construction.

The Court has also considered the Government's complaint that the Court's reading would subject "two aliens convicted of the same underlying removable offense" to "differing detention schemes based solely on whether a judge sentenced them to a custodial or non-custodial sentence, or sentenced them to a period of incarceration for which they received credit for time served." (Respondents' Opp'n Br. 21.)  This result is, however, consistent with the language Congress used in section 1226(c).  It is not irrational for the sentencing judge's individualized assessment of the need for a custodial sentence to be determinative of whether

Respondent must detain a person without bail or, instead, provide the person with an opportunity seek release on bail.

For the foregoing reasons, the Court finds that ICE is not required to detain Hylton without bond under 8 U.S.C. §1226(c).  In light of the Court's determination that Hylton is not properly subject to mandatory detention under 8 U.S.C. § 1226(c), the Court need not address the parties' arguments as to the significance of the gap in time between the imposition of his non-custodial sentences and his detention by ICE.

The Court must, however, address Hylton's argument that the length of his detention without bail has violated his constitutional rights.

Due Process and Length of Detention

Hylton also asserts that his continued detention without a bond hearing violates his right to due process under the Fifth Amendment.  In Demore v. Kim, the Supreme Court held that detention under 8 U.S.C. § 1226(c) for a "limited period" during removal proceedings is constitutional.  538 U.S. 510, 526 (2003).  There, the Supreme Court observed that such proceedings typically take fewer than five months, including appeals, and found a detention period of six months constitutionally permissible.  Id. at 530.

Indefinite detention in connection with removal proceedings without an opportunity for a bail hearing, where there is no possibility of actual removal, violates the due process rights of the detained alien.  See Monestime v. Reilly, 704 F. Supp. 2d 453 (S.D.N.Y. 2010) (finding that likelihood of indefinite detention by ICE supported grant of habeas petition where alien was detained pursuant to § 1226(c)); see also Zadvydas v. Davis, 533 U.S. 678, 682 (2001) (stating that

application of post-removal-period detention statute codified at 8 U.S.C. § 1231(a)(6) "would raise serious constitutional concerns" if it resulted in indefinite detention).

Courts have also recognized that even detention bounded by the parameters of ongoing removal proceedings that could result in actual removal can exceed constitutional limits if the length of the detention is unreasonable. See Kim, 538 U.S. at 530–31 (recognizing implicit time limit in section 1226(c) proceeding, but not establishing a bright-line temporal limit); Diop v. ICE, 656 F.3d 221, 231 (3d Cir. 2011) (concluding that § 1226(c) "implicitly authorizes detention for a reasonable amount of time").

There is no binding Second Circuit authority as to the reasonable outer limit of removal-related detention. Some courts have taken the position that aliens cannot be detained longer than six months without a bond hearing. See, e.g., Rodriguez v. Robbins, 715 F.3d 1127, 1139 (9th Cir. 2013); cf. Gordon v. Shanahan, No. 15-CV-261-JGK, 2015 WL 1176606 (S.D.N.Y. Mar. 13, 2015) (holding that alien was entitled to bond hearing both because duration of detention exceeded six months and because a fact-dependent inquiry would support the same conclusion). Other courts in this district and in other circuits have held that the reasonableness of the duration of detention turns on "factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention." Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 549 (S.D.N.Y. 2014); see Ly v. Hansen, 351 F.3d 263, 272–73 (6th Cir. 2003); Adler v. U.S. Dep't of Homeland Sec., No. 09 Civ. 4093 (SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009).  Under the second, fact-dependent approach, courts have scrutinized carefully whether the proceedings have been prolonged by unreasonable government action. Compare Adler, 2009 WL 3029328, at *2 (15-month detention reasonable because there was "no evidence . . . that the government ha[d]

dragged its feet"), with Ly, 351 F.3d at 272–73 (detention unreasonable because INS "drag[ged] its heels indefinitely in making a decision"). The Court finds the fact-dependent approach more persuasive and applies it accordingly.

Here, Hylton's detention has been far lengthier than the average proceedings against which the Kim Court measured the detention that had been challenged in that case. But his detention has been prolonged in large part due to the granting of Hylton's requests for time to seek representation, to prepare adequately for each conference before the immigration judge, to prepare his case in opposition to removal, and to seek relief from the removal order, and by his appeal of the order of removal against him. There is thus no evidence in the record to suggest that the immigration authorities have unreasonably prolonged his removal proceedings and related detention. Cf. Ly, 351 F.3d 263 (detention lengthened due to "the INS . . . drag[ging] its heels indefinitely in making a decision"); Tijani v. Willis, 430 F.3d 1241, 1241 (9th Cir. 2005) (government requests for extensions caused delay). Nor, in the Court's view, is further delay by reason of the Government's prompt interposition and prosecution of an appeal of the cancellation of the order of removal indicative of unreasonable delay.

Furthermore, the period of his detention is not indefinite. Cf. Monestime, 704 F. Supp. 2d at 458–59 (detention violated due process rights because U.S. moratorium on deportations to Haiti in the aftermath of an earthquake rendered petitioner's detention indefinite). Delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country. Cf. Kim, 538 U.S. at 532 n.14 ("Respondent contends that the length of detention required to appeal may deter aliens from exercising their right to do so . . . . As we have explained before, however, the legal system . . . is replete with situations requiring the making of difficult judgments as to which

course to follow, . . . and . . . there is no constitutional prohibition against requiring parties to make such choices." (internal citation and quotations omitted)).  Similar considerations apply in connection with delay pending the consideration of a timely Government appeal.  As noted above, the Government's appeal of a decision adverse to it does not, by itself, render detention pending that appeal unreasonable.  As of this writing, Hylton's detention has not been so unreasonably long as to violate his constitutional due process rights, and nothing in the current record suggests that it is likely to be prolonged unreasonably.

Burden of Establishing Eligibility for Release

Hylton has requested that, in the event the Court grants his Petition, the Court direct that the immigration judge provide an individualized bond hearing during which the Government would bear the burden of proving that Hylton's continued detention is warranted or, in the alternative, that the Court hold the individualized bond hearing and require the Government to prove that continued detention is warranted.  Hylton argues that the measures are warranted because his constitutional rights have been violated and because the immigration judge, in denying him bail on section 1226(c) grounds, held in the alternative that Hylton had not established that his release would not pose a danger to the community.  That alternative determination was made before the immigration judge ordered cancellation of Hylton's removal, however, and there is no indication in the record that the immigration judge had considered an evidentiary proffer by Hylton before making his alternative determination.

There is no controlling Circuit precedent supporting Hylton's request that the Government bear the burden of proof during an individualized bond hearing, or that the Court, instead of an immigration judge, should hold the individualized bond hearing.  Such remedies have been ordered where courts have found prolonged detention violative of an alien's constitutional

rights.  See Flores-Powell v. Chadbourne, 677 F. Supp. 2d 455, 475-79 (D. Mass. 2010) (reviewing lack of controlling authority regarding the appropriate remedy in cases involving aliens held pursuant to section 1226(c) whose periods of detention violated the Due Process Clause). Some courts have required the Government to bear the burden of establishing in immigration court that detention is warranted where they have found that the length of detention is unreasonable under the Due Process Clause.  See Francois v. Napolitano, No. 12-2806-FLW, 2013 WL 4510004, at *6 (D.N.J. Aug. 23 2013) (ordering individualized bond hearing in which Government bore burden of establishing necessity of continued detention); Martinez v. Muller, No. 12-1731-JLL, 2012 WL 4505895, at *4 (D.N.J. Sept. 25, 2012) (same).  The Flores-Powell court concluded that, based on "the unique facts" of the case, which included substantial and unnecessary delay in the immigration court, the "most appropriate equitable remedy [was] a bail hearing held before [the district court]," 677 F. Supp. 2d at 478-79, during which the Government would bear the burden of establishing the necessity of continued detention based on "traditional bail factors, such as the alien's risk of flight and potential danger to the community," id. at 477.

   Here, because 8 U.S.C. § 1226(c) is not applicable to Hylton in that there was no qualifying "release," Hylton is eligible for discretionary release under 8 U.S.C. §1226(a), and must be provided an individualized bond hearing.  Under normal ICE procedures, the alien who is eligible for consideration for release bears the burden of proof at such an individualized bond hearing.  See 8 C.F.R. §§ 1003.19(h)(3), 1236.1(c)(3); In re Guerra, 24 I. & N. Dec. 37 (BIA 2006) (citing Carlson v. Landon, 342 U.S. 524, 534 (1952) for proposition that alien in removal proceedings has no constitutional right to release on bond, holding that alien has burden of proof in bond proceeding and setting forth non-exclusive list of factors for consideration in determination).  Because Hylton has not suffered a constitutional violation, nor proffered facts

sufficient to demonstrate that an immigration judge would not weigh appropriately a developed record on the issue of the propriety of Hylton's release on bond, the Court declines to shift the burden of proof or remove the bond proceeding from the immigration court.

## CONCLUSION

For the foregoing reasons, the Petition is granted in part and denied in part. Respondent must provide Petitioner with an individualized bond hearing at which Petitioner is entitled to present evidence, by **June 23, 2015**. The Clerk of Court is requested to enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
      June 9, 2015

                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge